**SO ORDERED.**

**SIGNED this 19 day of November, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| THOMAS DAVID CONNOR and<br>PAMELA JO CONNOR, | 09-05517-8-JRL |
| DEBTORS. | |

## ORDER REGARDING OBJECTION TO EXEMPTIONS

The matter before the court is the chapter 13 trustee's objection to the debtors' exemptions. A hearing took place in Raleigh, North Carolina on November 4, 2009.

Thomas David Connor and Pamela Jo Connor filed a petition for relief under chapter 13 of the Bankruptcy Code on July 2, 2009. On their Schedule C-2, the local form for debtors claiming exemptions under federal laws or the laws of a state other than North Carolina, the Connors claimed the federal exemptions under 11 U.S.C. § 522(d). The trustee objected, contending that Mr. Connor was required to claim exemptions under North Carolina law and that his attempt to claim the federal exemptions was in bad faith.

The issue in this case arises from the intersection of § 522(b)(1), which controls the election of exemptions for joint debtors who are husband and wife, § 522(b)(2), which provides that the federal exemptions apply unless the applicable state law does not authorize a debtor to claim the

federal exemptions, and § 522(b)(3), which controls the applicable state law according to the domicile of the debtor prior to filing. Section 522(b)(3) looks to the domicile of the debtor during the 730 days immediately preceding the filing of the petition. This case presents an interesting question, as Mr. Connor lived in North Carolina during the 730 days prior to filing, but Mrs. Connor resided in Florida until June 2008.

The starting point for determining which exemptions apply is the domicile provision in § 522(b)(3)(A). As noted above, Mr. Connor lived in North Carolina during the relevant time. North Carolina General Statutes § 1C-1601(f) provides

> The exemptions provided in The Bankruptcy Code, 11 U.S.C. § 522(d), are not applicable to residents of this State. The exemptions provided by this Article and by other statutory or common law of this State shall apply for purposes of The Bankruptcy Code, 11 U.S.C. § 522(b).

Because North Carolina opted not to allow the use of the federal exemptions as contemplated in § 522(b)(2), it is known as an "opt out" state. Nothing else appearing, Mr. Connor is required to claim any exemptions under North Carolina law.

Mrs. Connor lived in Florida during a portion of the 730 days prior to filing. In this situation, § 522(b)(3)(A) provides that the court looks to the law of the state where the debtor's domicile was located for 180 days immediately preceding the 730-day period, which is Florida. Florida is an opt-out state, but it also requires a debtor to reside in the state in order to claim its exemptions. Accordingly, Mrs. Connor is not eligible to claim Florida exemptions as a result of the Florida law, and she is not eligible to claim North Carolina exemptions because of § 522(b)(3). Mrs. Connor is therefore subject to the savings provision of § 522(b)(3), which provides that "[i]f the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)," that

is, to claim the federal exemptions.[1]  Nothing else appearing, Mrs. Connor is required to claim the federal exemptions.

The debtors contend that they both claimed federal exemptions because of § 522(b)(1), which provides, in relevant part:

> In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (2) [the federal exemptions] and the other debtor elect to exempt property listed in paragraph (3) of this subsection [the state exemptions].  If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.

11 U.S.C. § 522(b)(1).  At least one court has held that where joint debtors resided in different states, they were required to elect the exemptions permitted under the laws of the opt-out state in which the male debtor resided.  See Seung v. Silverman, 288 B.R. 174, 176 (E.D.N.Y. 2003) (rejecting contention that because female debtor was a resident of New Jersey, she was not entitled to elect New York exemptions and was thus entitled to elect federal exemptions).  That case was decided prior to the 2005 addition of the domiciliary requirements of § 522(b)(3), however, and the rule of § 522(b)(1) "sets up something of a conflict with section 522(b)(3)'s stress upon domicile of a debtor and its provision that if a debtor does not meet the domiciliary requirements the debtor may

---

[1] This analysis presupposes that the court must honor the residency, domiciliary, and property location requirements of Florida's exemptions laws.  A minority of courts have found that § 522(b)(3)(A) preempts any limitation in state law to residence or domicile, but such a reading would render the savings clause of § 522(b)(3) moot.  See generally William Houston Brown et al., Bankruptcy Exemption Manual § 4:5 (2009).  Were the court to follow this minority view, Mrs. Connor would clearly be entitled to claim exemptions under Florida law while Mr. Connor claimed his exemptions under North Carolina law, as § 522(b)(1) speaks only to consistency between federal and state exemptions.  See also § 522(m) ("[s]ubject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case.").

3

use section 522(d) exemptions, even in an opt out state." William Houston Brown et al., Bankruptcy Exemption Manual § 4:5 (2009).

The problem with the Seung result is that it ignores a key word in § 522(b)(1): *elect*. Section 522(b)(1) prohibits married debtors from *electing* the federal and state exemptions. In opt out states, however, debtors do not elect to claim state exemptions, they are *required* to claim state exemptions.[2]  Similarly, because Mrs. Connor is not eligible to claim either North Carolina or Florida exemptions, she is *required* to claim the federal exemptions. Section 522(b)(1) does not speak to joint debtors' ability to claim federal and state exemptions where the result arises not from an election, but by operation of statute.

Similarly, § 522(b)(1) provides that if the parties cannot agree on the alternative to be elected, they shall be deemed to have elected the federal exemptions *"where such election is permitted under the law of the jurisdiction where the case is filed."*  North Carolina law does not permit the election of federal exemptions. N.C. Gen. Stat. § 1C-1601(f). Accordingly, the court finds that by its plain language, § 522(b)(1) does not apply in the circumstances before the court.[3]

Based on the foregoing, the chapter 13 trustee's objection to exemptions is **ALLOWED**. Mr. Connor has 30 days to amend his Schedule C to claim exemptions pursuant to North Carolina law.

---

[2] The debtors contend that they could have elected to claim no exemptions, but the question is not whether the debtors elect to claim exemptions or not to claim exemptions, but whether they may claim exemptions under the federal or state exemptions scheme.

[3] Section 522(b)(1) was added in 1984 to prohibit the practice of "stacking" exemptions, or maximizing the value of exemptions by claiming both federal and state exemptions. This problem was also largely resolved when most states opted out of the federal scheme, leaving debtors with no ability to elect the federal exemptions. The issue has only come back into play with the addition of the domiciliary requirements, but this reading of the statute still avoids abuses because debtors may not *choose* to use both state and federal exemptions to maximize their value. In this case, the parties agree that whether Mr. Connor claims exemptions under the federal or state scheme will not affect the required payout under the Connors' chapter 13 plan.

Because Mr. Connor's original claim of exemptions was based on a good faith reading of the statute, the court finds that his claim of exemptions under federal law was not in bad faith.

**END OF DOCUMENT**